PARIENTE, J.,
concurring in result.
I concur in result for two reasons. The first reason is that the majority could be read to approve of the trial court’s misstatements of the law — statements that there is a due diligence requirement in Brady and statements that appear to emphasize that the prosecutor did not have knowledge of notes in the possession of police in denying Pittman’s Brady claims. The second reason is that I disagree with the manner in which the majority sets forth the prejudice prong of Brady.
As to the trial court’s misstatements of the law, the majority could be read to approve of a due diligence requirement in Brady when Brady has no such requirement. Although the majority correctly sets forth the elements of a Brady claim by citing to Strickler, majority op. at 804, it approves of the trial court’s order that appears to impose a due diligence requirement. By quoting the trial court’s order without correcting its misstatements, majority op. at 804-08, the majority opinion could be deemed to have engrafted that requirement back into Brady.
This would of course be a serious misstatement of the purpose of Brady, which imposes the important requirement on prosecutors “to learn of any favorable evidence known to the others acting on the government’s behalf in the case,” Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), and to produce that evidence if it is material. This Court has explicitly stated: “[W]e point out that there is no ‘due diligence’ requirement in the Brady test and that the prosecutor is charged with possession of what the State possesses.... ” Archer v. State, 934 So.2d 1187, 1203 (Fla.2006). As more fully explained by this Court in Archer:
*821 [W]e have held that a defendant is not required to compel production of favorable evidence which is material, in that the evidence tends to negate the guilt of the accused or tends to negate the punishment. To comply with Brady, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government’s behalf in the case and to disclose that evidence if it is material. The postconviction court is in error to the extent that the court’s order is read to mean that [the defendant] had to demonstrate “due diligence” in obtaining favorable evidence possessed by the State or that the prosecutor’s obligation was only to give to [the defendant] favorable evidence which was in the prosecutor’s personal possession.
Id. at 1203 (emphasis added) (citations omitted). Of course, if the defendant knew of the evidence or had possession of it, then there could not be a Brady claim because the evidence could not be found to have been withheld from the defendant. See Occhicone v. State, 768 So.2d 1037, 1042 (Fla.2000) (“Although the ‘due diligence’ requirement is absent from the Supreme Court’s most recent formulation of the Brady test, it continues to follow that a Brady claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant.”).
With regard to the PSIs of the State witnesses who testified against the defendant, the majority quotes the trial court’s order, which states: “Defense counsel did not ask the Court to provide the PSI to the defense.” Majority op. at 807. However, I know of no way that the defendant would have had access to those PSIs and know of no reason why a defense lawyer would have automatically filed a motion to obtain the PSIs of all testifying witnesses. The defense would most likely be accused of going on a fishing expedition. If the PSI contains information favorable to the defendant, especially in the case of State witness Pounds in which a mental issue was revealed, then it was incumbent on the State to produce it.
The trial court also appears to base its denial of the Brady claim, at least in part, on the fact that the prosecutor did not have knowledge of material in the possession of police. The trial court’s order repeatedly states that the prosecutor or State Attorney’s Office was not aware of the existence of notes in the possession of a detective. See majority op. at 807, 808-09. The majority does not clarify that it makes no difference under Brady whether the prosecutor in this case, Hardy Pickard, had possession or knowledge of the notes because the prosecutor is charged with the knowledge of the police agencies that participate in the investigation of the case. See Archer, 934 So.2d at 1203 (“[T]he prosecutor is charged with possession of what the State possesses.... ”); see also Gorham v. State, 597 So.2d 782, 784 (Fla.1992) (“Even though the police did not reveal Johnson’s informant status to the state attorney who prosecuted Gorham’s case, the state attorney is charged with constructive knowledge and possession of evidence withheld by other state agents, such as law enforcement officers.” (emphasis added)); Guzman v. State, 868 So.2d 498, 503, 508 (Fla.2003) (finding a Brady violation where the prosecutor failed to disclose that the police had paid an informant a $500 reward); cf. Kyles, 514 U.S. at 437, 115 S.Ct. 1555 (“[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.” (emphasis added)).
I also concur in result only because I disagree with the manner in which the *822 majority sets forth the prejudice prong. In my view, it continues to be extremely important to always express the prejudice prong of Brady in terms of a probability sufficient “to undermine confidence in the verdict,” Strickler v. Greene, 32.7 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting Kyles, 514 U.S. at 435, 115 S.Ct. 1555), and not a reasonable probability of a different result. The United States Supreme Court has explained:
The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A “reasonable probability” of a different result is accordingly shown when the government’s evidentiary suppression “undermines confidence in the outcome of the trial.”
Kyles, 514 U.S. at 434, 115 S.Ct. 1555 (quoting United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). The majority initially sets forth the standard in terms of undermining confidence in the outcome, majority op. at 804, but then repeatedly states as to prejudice that Pittman has failed to show that had the evidence been disclosed that “there is a reasonable probability that the jury would have reached a different verdict.” Majority op. at 806, 808, 809, 810, 815.
I agree with the ultimate result to affirm because in my view the sum total of all of the information that Pittman alleges to be favorable as Brady material would not either singularly or cumulatively undermine confidence in the outcome of either the guilt or penalty phase. I further agree that no ineffective assistance of counsel has been demonstrated, and I agree that as to the guilt-phase newly discovered evidence claim, Pittman has not demonstrated that the evidence of what Marie Pittman told Carlos Battles about Cindy Pittman is of such a nature that it would probably produce an acquittal on retrial. I also agree that the penalty-phase newly discovered evidence claim is without merit as the PET scan results are not of such a nature that they would probably produce a different sentence.
For all these reasons, I would affirm the trial court’s result but not its reasoning. Accordingly, because the majority opinion quotes in full, and appears to adopt, the trial court’s erroneous statements and reasoning, and because I disagree with the manner in which the majority sets forth the Brady prejudice prong standard, I concur in result only.